**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 95-5296

DAVID J. PINGLEY,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Elkins.
Robert E. Maxwell, District Judge.
(CR-94-39)

Argued: February 2, 1996

Decided: March 15, 1996

Before WILKINSON, Chief Judge, and RUSSELL and
MURNAGHAN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Paul Joseph Harris, WALLACE & HARRIS, Elkins,
West Virginia, for Appellant. Sherry L. Muncy, Assistant United
States Attorney, Elkins, West Virginia, for Appellee. **ON BRIEF:**
William J. Wilmoth, United States Attorney, Elkins, West Virginia,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

David J. Pingley was convicted of aiding and abetting a bank robbery and of using a firearm during the commission of a felony. He raises numerous points of error with regard to both his conviction and his sentence. We find Pingley's contentions without merit and therefore affirm the judgment of the district court.

I.

On February 4, 1994, David Paul Cox and Donald Robert Shiflett robbed the Tygart Valley Branch of the Citizen's National Bank in Beverly, West Virginia. Pingley was their getaway driver. While Pingley asserted his innocence at trial, substantial evidence was presented showing his involvement in the robbery: two diagrams of the bank were found in Pingley's home; his former girlfriend testified that Pingley had thought the bank an easy mark; and both Cox and Shiflett testified as to Pingley's role in the heist. A jury convicted Pingley, and he was sentenced to 108 months for the bank robbery, 18 U.S.C. § 2113, and 60 months for the use of a firearm during the commission of a violent felony, 18 U.S.C. § 924(c). Pingley now appeals.

II.

A.

Pingley asserts that the statements from two potential witnesses, Mr. Metz and Mr. McWilliams, who saw nothing the day of the robbery, should have been brought to Pingley's attention pursuant to Brady v. Maryland, 373 U.S. 83 (1963). First of all, Pingley's counsel was aware of the existence of both Metz and Mr. McWilliams as a result of other witnesses' testimony. Second, the two individuals in question did not witness the robbery and had no exculpatory evidence

2

to offer. Moreover, another witness, Ms. McWilliams, who was with Metz and Mr. McWilliams at the time of the robbery, actually testified at the trial. Had the other two witnesses testified, their testimony would have been cumulative. Even supposing an error occurred here, it is harmless given the testimony of Ms. McWilliams and the overwhelming evidence against Pingley.

B.

Pingley next contests the admission of certain threatening statements that he made to his former girlfriend, Barbara Cook. Pingley's statements were against his interest and made in response to Ms. Cook's inquiries: "he would talk about how easy it would be [to rob the Beverly bank] and how it is so far from the cops"; "[h]e did ask my daughter and I if we would like to go to Canada on a shopping spree"; and "[h]e told me that if I [contacted the authorities] that I would be found in the parking lot of Wal-Mart with a bullet in my brain." As Ms. Cook's testimony was highly probative of Pingley's involvement in the robbery, the district court did not abuse its discretion by allowing her testimony.

C.

Pingley also objects to the district court's refusal to allow his counsel to delve into David Cox's mental health. In particular, Pingley wanted to cross-examine Cox on a psychiatric examination that showed Cox had no mental impairments. In denying Pingley's request, the district court relied on United States v. Lopez, 611 F.2d 44, 45 (4th Cir. 1979), which held that "psychiatric history is an area of great personal privacy which can only be invaded in cross-examination when required in the interests of justice." We agree with the district court that allowing cross-examination here would have merely side-tracked the trial into collateral issues unrelated to Pingley's offense. Accordingly, we find no abuse of discretion.

D.

Pingley further alleges that the government's use of its peremptory strikes constituted gender bias. First, this issue was not raised until

3

after trial and as such, the challenge is not properly before this court. Second, because the government struck both men (4) and women (2), it does not appear that Pingley's gender bias claim has any basis.

E.

Finally, Pingley objects to the district court's two level upward departure pursuant to the Sentencing Guidelines. The court considered several factors before departing upward pursuant to USSG § 5K2.0: (1) the attempt by the bank robbers to lock employees in the vault; (2) the presence of a twelve year old girl at the robbery; and (3) the subsequent physical disability of a bank employee, which her physician attributed to stress caused by the bank robbery. While the district court relied upon USSG § 5K2.0 (departure may be merited by a factor not adequately considered by the Guidelines), we also find that an upward departure was justified under USSG§ 2B3.1(b)(4)(B) (providing for two level upward enhancement "if any person was physically restrained to facilitate commission of the offense"). See United States v. Doubet, 969 F.2d 341, 345-48 (7th Cir. 1992) (ordering bank tellers into an unlocked bathroom under threat of violence constituted physical restraint under USSG § 2B3.1(b)(4)(B)). Because the ordering of bank employees into an unlocked vault under the barrel of a gun constituted physical restraint, we find the upward departure here was appropriate under the Sentencing Guidelines.

III.

For these reasons, we affirm the judgment of the district court.

AFFIRMED

4